UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DONALD SHERMAN,

Plaintiff,

v.

HAROLD WICKHAM, *et al.*,

Respondents.

Case No. 3:21-cv-00168-ART-CSD

ORDER OVERRULING DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE DENNEY'S REPORT AND RECOMMENDATION (ECF NO. 63).

Plaintiff Donald Sherman ("Sherman"), who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), brings this action pursuant to 42 U.S.C. § 1983 against Defendants Harold Wickham, Kim Thomas, William Gittere, Brian Williams, William Reubart, David Drummond, and Tasheena Cooke (collectively, "Defendants"). (ECF No. 57 (First Amended Complaint)). Before the Court is Defendants' Objection (ECF No. 63) to Magistrate Judge Denney's Report and Recommendation ("R&R") (ECF No. 62) granting-in-part Sherman's Renewed Motion for Preliminary Injunction (ECF No. 47). For the reasons discussed herein, the Court overrules Defendants' Objection, adopts Judge Denney's R&R granting-in-part Sherman's Motion (ECF No. 62) and, consistent with the R&R, defers ruling on the scope of the injunctive relief.

## I. BACKGROUND

Donald Sherman, a descendant of the Minnesota Chippewa Tribe (Ojibwe) moves this court for a preliminary injunction allowing him to use a ceremonial sweat lodge on the grounds of NDOC's Ely State Prison ("ESP") to participate in his Native American religious practices. (ECF No. 47 at 2). Sherman has been condemned to death, and NDOC does not allow condemned Native American inmates to use the ceremonial sweat lodge at ESP because ESP's Operational Procedure ("OP") 810 states that all "CMU [Condemned Men's Unit] religious

activities [must] take place in the CMU housing unit." (ECF No. 47-8 at 3). Defendants concede that not having access to the sweat lodge substantially burdens Sherman's religious exercise but argue that they have a compelling interest in denying him access and that a total ban on sweat lodge access is the least restrictive means of regulating death row inmates and ensuring the safety and security of staff and inmates. Sherman argues that, despite his condemned status, the Religious Land Use and Institutionalized Persons Act ("RLUIPA")[1] renders NDOC's total ban on his access to the ceremonial sweat lodge under any set of restrictions unlawful. *See* 42 U.S.C. § 2000cc-1.

After a hearing and supplemental briefing on the Motion for Preliminary Injunction, Judge Denney issued a R&R granting Sherman's Motion insofar as it prayed for Sherman's access to the sweat lodge and directed the parties to meet and confer as to the scope of that access. (ECF No. 62 at 21). In response, Defendants filed an Objection (ECF No. 63) which this Court now overrules.

## II. LEGAL STANDARD

### A. De Novo Review of Magistrate Judge Report and Recommendation

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." *Id.* The Court's review is thus de novo because Defendants filed their Objection. (ECF No. 63).

### B. Preliminary Injunction

Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555

---

[1] Sherman originally brought three causes of action: two Free Exercise claims and one claim alleging violations of RLUIPA. The RLUIPA claim is the sole claim at issue in this order.

U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). Furthermore, under the Prison Litigation Reform Act ("PLRA"), preliminary injunctive relief must be "narrowly drawn," must "extend no further than necessary to correct the harm," and must be "the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

A plaintiff who seeks a mandatory injunction—one that goes beyond simply maintaining the status quo during litigation—bears a "doubly demanding" burden: "she must establish that the law and facts clearly favor her position, not simply that she is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). The Ninth Circuit has cautioned that mandatory injunctions are "particularly disfavored" and "should not issue in doubtful cases." *Id.* (internal quotations omitted).

Finally, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Medical Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). "This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims in the underlying complaint itself." *Id.* The necessary connection is satisfied "where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Id.* (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)). "Absent that relationship or nexus, the district court lacks authority to grant the relief requested." *Id.*

## C. RLUIPA

RLUIPA is "more generous to the religiously observant than the Free Exercise

3

Clause." *Jones v. Slade*, 23 F.4th 1124, 1139 (9th Cir. 2022) (citations omitted). "To state a claim under RLUIPA, a prisoner must show that: (1) he takes part in a 'religious exercise,' and (2) the State's actions have substantially burdened that exercise." *Walker v. Beard*, 789 F.3d 1125, 1134 (9th Cir. 2015) (citing *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008)). If a prisoner shows that he takes part in a religious exercise and the State has substantially burdened that exercise, the burden shifts to the State to prove its actions were the least restrictive means of furthering a compelling governmental interest. *Id.* (citing *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)).

RLUIPA defines religious exercise broadly to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *see also Greene v. Solano Cnty. Jail*, 513 F.3d 982, 986 (9th Cir. 2008). RLUIPA's definition of religious exercise goes beyond abstract beliefs to include "physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine . . . ." *Walker*, 789 F.3d at 1134 (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005)).

Because RLUIPA "reflects a congressional effort to accord heightened protection to religious exercise" it is to be "'construed broadly in favor of protecting an inmate's right to exercise his religious beliefs.'" *Jones*, 23 F.4th at 1140 (citing *Warsoldier*, 418 F.3d at 995).

## III.     DISCUSSION

Defendants object to the R&R on the following grounds: (1) Sherman failed to properly exhaust his administrative remedies; (2) Prohibiting Sherman access to the sweat lodge is supported by a compelling government interest and reflects the least restrictive means of furthering that interest; and (3) Sherman cannot show irreparable injury. Defendants correctly state that any injunctive relief permitting any kind of access to the sweat lodge would constitute "mandatory" injunctive relief because it would alter (as opposed to preserve) the status quo. *Garcia*, 786

1  F.3d 733, 740 (9th Cir. 2015) (en banc).

2  **A. Administrative Exhaustion**

3  Sherman exhausted his administrative remedies by sufficiently (and
4  repeatedly) alerting prison officials that he seeks access to the sweat lodge. *See*
5  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2020) ("a grievance suffices if it
6  alerts the prison to the nature of the wrong for which redress is sought.") (quoting
7  and adopting standard from *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)).
8  The PLRA provides that "[n]o action shall be brought with respect to prison
9  conditions under section 1983 of this title, or any other Federal law, by a prisoner
10  confined in any jail, prison, or other correctional facility until such administrative
11  remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Sherman went
12  through each of the three levels of ESP's grievance process requesting, in various
13  terms, access to the sweat lodge. (*See* ECF Nos. 47-18 to 47-23) Each time he
14  was denied. Now, Defendants fault his first level grievance because he "fails to
15  make any explicit demand to change the administrative regulation. . ." before
16  faulting his second level grievance for requesting NDOC to "amend AR. 810, and
17  allow me to sweat." (ECF No. 63 at 20). Defendants argue that Sherman's request
18  to "allow me to sweat" would not allow "a prison official reading this grievance [to]
19  ascertain that reasonable access to the sweat lodge is what's intended." (ECF No.
20  63 at 20). It is clear from Sherman's requests and Defendants' denials that
21  ultimate relief Sherman sought is to sweat; Defendants clearly understood his
22  request because they denied Sherman's grievances on the merits at each level.
23  *See Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016) (holding that a prisoner
24  exhausts available administrative remedies under the PLRA "despite failing to
25  comply with a procedural rule if prison officials ignore the procedural problem
26  and render a decision on the merits of the grievance at each available step of the
27  administrative process.")

28  For the foregoing reasons, the Court agrees with Judge Denney that Sherman

exhausted his administrative remedies as required by the PLRA.

**B. Likelihood of Success on the Merits**

Sherman seeks a mandatory injunction enjoining Defendants from enforcing their policy banning him, as a death row inmate, from using the sweat lodge. (ECF No. 47 at 23). Because such relief will alter the status quo, Sherman must therefore show that "the law and facts clearly favor [his] position, not simply that [he] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). Sherman meets this exacting standard because he has shown that being denied access to the sweat lodge substantially burdens his religious exercise and Defendants fail to demonstrate that a total ban on Sherman's access is the least restrictive means of serving a compelling government interest that is particular to him. Therefore, Sherman has shown that the law and facts clearly favor his position in this action.

**1. Substantial Burden**

While Defendants have conceded that a substantial burden on Sherman's religious exercise exists, the Court addresses substantial burden for the sake of completeness. The Ninth Circuit has "little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden on that religious exercise." *Greene*, 513 F.3d at 988 (citing *Murphy v. Mo. Dep't of Corrs.*, 372 F.3d 979, 988 (8th Cir. 2004)). The R&R found that "Defendants do not dispute that Plaintiff has sincerely held belief that he must participate in the Native American sweat lodge ceremony" and "likewise conceded that banning him from engaging in this practice because of his CMU status substantially burdens his religious exercise." ECF No. 62 at 4. Defendants did not object to the R&R's analysis and finding on that point, which this Court adopts. *See* ECF No. 62 at 3-4 (discussing, inter alia, *Jones v. Slade*, 23 F.4th 1124 (9th Cir. 2022)).

Rather, Defendants object that banning Sherman from the sweat lodge furthers a compelling governmental interest and is the least restrictive means of

furthering that compelling governmental interest.

## 2. Compelling Governmental Interest

While Defendants point to a range of valid safety and operational concerns for restricting access to the sweat lodge, they fail to articulate a compelling interest in denying access to Sherman in particular. RLUIPA "requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Holt v. Hobbs*, 574 U.S. 352, 363 (2015) (noting that RLUIPA and RFRA both contemplate an inquiry focused on the individual) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014)). In light of RLUIPA, no longer can prison officials justify restrictions on religious exercise by simply citing to the need to maintain order and security in a prison." *Greene*, 513 F.3d at 989-90.

Defendants must justify their policy of banning Sherman, a condemned inmate, from using the sweat lodge. ESP has a sweat lodge and Defendants admit that 23 convicted murderers with Level 1 Close Custody status could be eligible to use the sweat lodge if they met the religious requirements. (ECF No. 59 at 2). Defendants argue that condemned inmates pose a different kind of safety risk (ECF No. 59 at 2); prison officials have determined that "'CMU inmates can never be Level 1' and, therefore can never be safe enough for being provided access to the sweat lodge" (ECF No. 63 at 5); and as a condemned man, NDOC regulations restrict Sherman's activities far more than other convicted murderers who are allowed to access the sweat lodge. (ECF No. 63 at 6).

Defendants have failed to articulate the marginal interest in enforcing the ban on Sherman. *See Johnson v. Baker*, 23 F.4th 1209, 1217 (9th Cir. 2022) ("[T]he government may not satisfy the compelling interest test by pointing to a general interest—it must show the 'marginal interest in enforcing' the ban. . . .") (quoting *Holt*, 574 U.S. at 364). Defendants fail to address the marginal interest in denying

sweat lodge access to Sherman while allowing it to other convicted murderers who use dangerous implements to construct a sweat lodge (ECF No. 63 at 9), are concealed from view while they sweat (*Id.* at 11), and have a similar incentive to escape. (*Id.* at 6). While Defendants undoubtedly have good reasons for keeping condemned inmates separate from other inmates, Sherman does not seek to intermingle with inmates assigned other classifications—he seeks to sweat.

While Defendants repeat their particularized reasons for denying Sherman access to the sweat lodge, these do not justify the total ban. Defendants correctly note that Sherman escaped from a different correctional institution twenty-five years ago and committed a murder during that escape. (ECF No. 63 at 9-10). Defendants contend that the restrictions they place on condemned inmates like Sherman are responsible for his lack of escape attempts over the past twenty-five years. (*Id.* at 10). Even if this is the case, Defendants do not explain how allowing Sherman access to the sweat lodge would require the modification or elimination of any of the restrictions placed on Sherman besides those contained in AR 810 and OP 810 that mandate religious exercises be performed inside the CMU.

Defendants also do not address Sherman's record while incarcerated within NDOC. With the exception of a twenty-one-year-old disciplinary finding that Sherman possessed a recipe for methamphetamine (ECF No. 51 at 96) and two dismissed disciplinary charges (*Id.* at 98-102) Defendants have submitted no evidence of Sherman's violent behavior while incarcerated within NDOC. As Magistrate Judge Denney pointed out, Defendants do not dispute that Sherman enjoys all of the CMU privileges possible under existing regulations, has not demonstrated risk of violence or escape while in NDOC, served as the CMU barber, and has been a member of the Inmate Advisory Committee for CMU prisoners. (ECF No. 47-1 at 3-4).

Next, Defendants argue that the R&R failed to consider the burdens placed on ESP and NDOC. (ECF No. 63 at 10). Judge Denney evaluated four burden-related

8

arguments made by Defendants: 1) every Correctional Emergency Response Team (CERT) member on shift will be required to transport Sherman to the sweat lodge; 2) an additional officer would be required to man the closest tower to provide additional security while Sherman uses the sweat lodge; 3) the Chaplain would be required to stay inside or near the sweat lodge for the entire period Sherman uses the lodge; and 4) allowing Sherman access to sweat will "compel the institution to permit access to every other inmate. . . ." (ECF Nos. 62 at 11-15; 63 at 13). The Court addresses each in turn.

First, Defendants argue that every CERT team member on shift would be required to transport Sherman to the sweat lodge because its location in the prison's "no man's land" would trigger the manpower regulations applied to "outside transportation." (ECF No. 63 at 11). Judge Denney rejected this argument because hearing testimony indicated the "CERT team is not utilized at all when non-CMU inmates access the sweat lodge" and concluded that the AR pertaining to transport of a maximum custody inmate outside the institution "has no impact" here, where Sherman would stay *inside* ESP at all times while accessing the sweat lodge. (ECF No. 62 at 11-12). Even if those outside transportation regulations applied, Defendants have submitted no evidence that *all* on-duty CERT members would be required to transport Sherman. The transportation policies cited by Defendants allow maximum security inmates to be transported outside the institution by two correctional officers. (ECF No. 51 at 71) (citing OP 424), including one armed officer (ECF No. 51 at 79) (citing AR 430.03). Defendants have not shown that that the total ban on access to the sweat lodge is justified by the need for CERT presence.

Second, Defendants have not shown why an additional officer would be required in the guard tower in their Objection. (*See* ECF No. 63 at 10-11). The Court agrees with Judge Denney that Defendants have not substantiated their

claim of operational burden on this point.

Third, Defendants argue that the Chaplain would be required to remain in the sweat lodge for the duration of Sherman's use because "no regulation contemplates giving access to one inmate at a time as would be required for Sherman." (ECF No. 63 at 11). It does not follow that the absence of an existing regulation that would accommodate Sherman means the Chaplain, in particular, would be required to attend for the duration of Sherman's ceremony. The OP 810.1 policy requires the Chaplain to "pass by a minimum of once every hour to observe the area" regardless of what classification of inmates are using the sweat lodge. (ECF No. 51 at 60). Therefore, Defendants have not substantiated their claim of operational burden regarding the Chaplain's attendance.

Fourth, Defendants maintain that allowing Sherman to access the sweat lodge will open the floodgates to new RLUIPA claims.[2] AR 810 requires case-by-case determination of any special request (ECF No. 47-9 at 5) and the entire point of RLUIPA is to "make exceptions for those sincerely seeking to exercise religion." *Yellowbear v. Lampert*, 741 F.3d 48, 62 (10th Cir. 2014). Judge Denney recommended that Sherman, and Sherman alone, may not be denied access to the sweat lodge based on his status as a condemned man. (ECF No. 62 at 21). Defendants are correct that sweat lodge materials pose a credible threat to NDOC staff each time they are used, which is why there are extensive regulations that govern access to the sweat lodge. (ECF No. 63 at 9). While there may be prisoners at every level of classification whose access to the sweat lodge would be lawfully prohibited based on their past conduct, Defendants have failed to show a compelling interest in preventing Sherman in particular from accessing the sweat lodge given his disciplinary record while housed within NDOC and their practice of allowing convicted murderers with good disciplinary records access to the

---

[2] Defendants admit that "there are no other CMU inmates currently seeking access to the sweat lodge." (ECF No. 63 at 12.)

sweat lodge.

For the foregoing reasons, Defendants have not sufficiently demonstrated that denying Sherman access to the sweat lodge is justified by compelling government interests.

### 3. Least Restrictive Means

Even assuming a compelling government interest, Defendants bear the burden of demonstrating that denying Sherman access to the sweat lodge "is the least restrictive means" of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1. As Magistrate Judge Denney pointed out, while it is true that prison administrators are "accorded deference with regard to prison security" they must also demonstrate they "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Greene*, 513 F.3d at 989 (quoting *Warsoldier*, 418 F.3d at 999). "'The least-restrictive-means standard is especially demanding,' and it requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].'" *Holt*, 574 U.S. at 364-65. Defendants argue that a total ban on Sherman's access to the sweat lodge is the least restrictive means of "regulating maximum custody death row inmates in a maximum custody institution" and ensuring the "safety and security of all staff and inmates." (ECF Nos. 50 at 14; 63 at 13-14). Because Defendants articulate many of the same arguments in the operational burden and least restrictive means sections of their briefing, the Court incorporates by reference the compelling government interest section of this Order.

Defendants repeat their arguments regarding the need to regulate condemned inmates and the anticipated burdens on staff and the prison chaplain if Sherman were allowed to sweat. Regarding Defendants argument that Sherman cannot be subject to the same policies as other inmates because condemned and non-condemned inmates may not intermingle (ECF No. 63 at 14), Defendants fail to

response to Sherman's proposal that he could sweat alone without intermingling with non-condemned inmates (ECF No. 64 at 14). Defendants argue that "correctional officers or staff cannot and should not be required to build and operate the sweat lodge" (ECF No. 63 at 14), but fail to address the feasibility of Sherman constructing the sweat lodge himself or with an approved volunteer.

Defendants further claim that "the Chaplain's presence must be increased should Sherman have access to the sweat lodge." (ECF No. 63 at 14). Defendants cite the Declaration of William Reubart, in which Reubart states that "if a CMU inmate is permitted access to the sweat lodge, then the institutional chaplain is required to attend for the entire period per current procedures." (ECF No. 51 at 64). It is unclear how this can be the case, as Defendants argue that "there is no existing procedure that clearly lays out CMU access to the sweat lodge. . . ." (ECF No. 63 at 11). Regardless, OP 810.1 requires the Chaplain to "pass by a minimum of once every hour to observe the area" regardless of what classification of inmates are using the sweat lodge. (ECF No. 51 at 60). Therefore, Defendants' objection on this point is not particularized to Sherman; it is unclear how mandating the Chaplain pass by a minimum of every half-hour, or even every fifteen minutes, would preclude his presence at simultaneous religious ceremonies elsewhere at ESP any more than the existing operational procedure does for non-condemned inmates.

Finally, Defendants understandably focus on the burden imposed by granting Sherman one-time as opposed to more frequent access to the sweat lodge. Defendants concede that allowing Sherman access to the sweat lodge once prior to his execution would be "manageable in a one-time event." (ECF No. 63 at 15). While more frequent access would be more burdensome, the frequency of access has neither been demanded by Sherman nor set by the Court.[3] Rather Sherman

---

[3] For example, in *Fowler v. Crawford*, the Eighth Circuit found prohibiting

1   opposes the total ban and it is clear that condemned inmates are already

2   transported around the prison for secular purposes without unduly burdening

3   Defendants. (ECF No. 62 at 13).

4       Defendants have not met their burden to demonstrate that a total ban on

5   Sherman's access to the sweat lodge is the least restrictive means of satisfying a

6   compelling government interest. Accordingly, Sherman has shown that "the law

7   and facts clearly favor [his] position, not simply that [he] is likely to succeed."

8   *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). As explained

9   above, Defendants' have conceded that their policy banning Sherman from

10  accessing the sweat lodge substantially burdens his religious exercise.

11  Defendants fail to demonstrate that a total ban on Sherman's access *in particular*

12  is the least restrictive means of serving a compelling government interest.

13  Therefore, Sherman has shown that the law and facts clearly favor his position

14  in this action.

15  **C. Irreparable Injury**

16      The Court next considers whether Sherman has shown irreparable injury.

17  Citing *Allen v. Toombs* 827 F.2d 563, 567 (9th Cir. 1987), Defendants maintain

18  that prohibiting access to a sweat lodge does not violate the First Amendment

19  under Ninth Circuit precedent and that Sherman therefore cannot demonstrate

20  irreparable injury. (ECF No. 63 at 16). Defendants' reliance on *Allen* is inapposite

21  as that case predated RLUIPA and subsequent Supreme Court jurisprudence

22  expressly rejects their arguments.

23      As Judge Denney recognized, the Supreme Court in *Warsoldier,* which

24  considered irreparable harm under RLIUPA, held that when a plaintiff "raise[s] a

25  colorable claim that the exercise of his religious beliefs has been infringed, he has

26  

27  a sweat lodge at a maximum-security facility did not violate RLUIPA when the
    Plaintiff made an "all or nothing" request to sweat a minimum of seventeen times
28  per year. 534 F.3d 931, 933-34, 940 (8th Cir. 2008).

13

sufficiently established that he will suffer an irreparable injury absent an injunction.'" 418 F.3d at 1002.

Defendants also argue that Sherman will not experience irreparable injury because he is "permitted to practice is [sic] religion in all ways in his unit." (ECF No. 63 at 16). This is immaterial to the analysis because RLUIPA's plain language forbids the court "from evaluating the centrality of a religious practice or belief." *Johnson*, 23 F.4th at 1214-15 (citing 42 U.S.C. § 2000cc-5(7)(A)). "[I]t makes no difference that a prisoner may still practice his 'religion as a whole' under the State's restrictions. . . what matters is whether a regulation 'burden[s] a particular facet of [the prisoner's] religious practice." *Id.* at 1215 (citing *Greene*, 513 F.3d at 987). Sherman is a member of a land-based religion and he is being prohibited entirely from accessing a land-based ritual practice. He has sufficiently established that he will suffer an irreparable injury here, even if he is allowed to practice other tenants of his religion inside the CMU.

Defendants further claim that no irreparable harm will beset Sherman because he has prayed for money damages. (ECF No. 63 at 16). Judge Denney considered and rejected that argument on the ground that RLUIPA only allows for injunctive relief. (ECF No. 62 at 18-19).

Because Sherman has asserted a colorable claim of infringement on his exercise of his religious beliefs, he has sufficiently established he will suffer irreparable injury in the absence of injunctive relief.

**D. Balance of Equities and Public Interest**

Regarding the equities, Sherman argues that his constitutional rights will continue to be violated absent an injunction (ECF No. 64 at 20) while Defendants argue that prohibiting Sherman from accessing the sweat lodge ensures the safety of ESP. (ECF No. 63 at 16). Sherman has the better of the arguments here because, as discussed above, Defendants have not shown that restrictions on Sherman *in particular* serve a compelling government interest.

"The third and fourth factors of the preliminary-injunction test—balance of equities and public interest—merge into one inquiry when the government opposes a preliminary injunction." *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). "The 'public interest' mostly concerns the injunction's 'impact on nonparties rather than parties.'" *Id.* (quoting *Bernhardt v. L.A. Cnty.*, 339 F.33d 920, 931 (9th Cir. 2003)).

On balance, the equities and public interest favor Sherman. Courts have acknowledged that ensuring respect for the constitutional rights of inmates like Sherman is in the public interest. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (citation omitted); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.")

Courts have found as a matter of law that the government does not have a compelling interest in an absolute prohibition on sweat lodge access for an individual inmate. *See, e.g.*, *Yellowbear*, 741 F.3d 48; *Pasaye v. Dzurenda*, 375 F. Supp. 3d 1159 (D. Nev. 2019), *on reconsideration in part*, No. 2:17-CV-02574-JAD-VCF, 2019 WL 2905044 (D. Nev. July 5, 2019). Sherman's request is typical of a request for injunctive relief under RLUIPA in which a court orders institutional defendants to provide an exception to an existing policy to uphold the constitutional rights of the incarcerated. *See, e.g.*, *Holt*, 574 U.S. at 369-70 (finding Defendant's grooming policy violated RLUIPA insofar as it prevented petitioner from growing a ½-inch beard in accordance with his religious beliefs); *Johnson*, 23 F.4th at 1218 (affirming district court's injunction ordering Nevada prison officials to allow plaintiff to possess ½-ounce of scented oil in his cell for personal use with his prayers).

The Court agrees with Judge Denney that Sherman's rights will continue to be infringed without an injunction, and Defendants have not shown sufficient evidence that allowing Sherman in particular to sweat will impact the safety and security of ESP. Therefore, the Court finds that the balance of equities tips in Sherman's favor and that an injunction is in the public interest.

**E. PLRA**

Although Defendants argue that granting Sherman any access to the sweat lodge will violate the PLRA (ECF No. 63 at 21), Sherman correctly observes that this argument is premature because the specifics of the relief Sherman is requesting, including the frequency and terms of access, are not yet before the Court. (ECF No. 64 at 21). The PLRA requires that preliminary injunctive relief must be "narrowly drawn," must "extend no further than necessary to correct the harm," and must be "the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Judge Denney recommended that Sherman be granted access to the sweat lodge but noted that "the court cannot conclude that access should be unfettered, and Plaintiff's request, as it stands, is overbroad." (ECF No. 62 at 21). Judge Denney further recommended that the parties be ordered to meet and confer regarding the specifics of Sherman's access to the sweat lodge. (*Id.*) The Court agrees with Judge Denney that Defendants' blanket refusal to allow Sherman access to the sweat lodge violates RLUIPA, and further agrees that it must defer ruling on the preliminary injunction until the scope of requested relief is clearly before the Court.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED THAT Judge Denney's Report and Recommendation (ECF No. 62) is adopted in full.

IT IS FURTHER ORDERED that Sherman's Motion for Preliminary Injunction (ECF No. 47) is granted insofar as Sherman should be granted access to the sweat lodge.

1    IT IS FURTHER ORDERED THAT the parties meet and confer regarding the

2    specifics of Sherman's access to the sweat lodge. If the parties come to an

3    agreement regarding the scope of that access, they shall file a stipulation

4    outlining their agreement for the Court's approval within 21 days of the date of

5    this Order. If the parties cannot come to an agreement, they shall file a notice

6    indicating the same within in 21 days of the date of this Order, and Judge Denney

7    may order supplemental briefing or additional hearings as appropriate and issue

8    a report and recommendation for the parameters of the relief.

9    IT IS FURTHER ORDERED THAT Defendants' Objection (ECF No. 63) is

10   overruled with the exception of Defendants' arguments regarding the permissible

11   scope of the injunction under the PLRA, which this Court defers ruling on until

12   the parties have stipulated to the parameters of the relief or Magistrate Judge

13   Denney has issued a report and recommendation regarding the permissible scope

14   of the relief requested.

15   IT IS FURTHER ORDERED THAT the Court defers ruling on Sherman's

16   Renewed Motion for Preliminary Injunction (ECF No. 47) until after the scope of

17   the relief requested is defined before the Court.

19   DATED THIS 29th day of March 2023.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE